UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

|  |  |
|---|---|
| IN RE: WESTERN STATES WHOLESALE NATURAL GAS ANTITRUST LITIGATION, | MDL 1566<br>2:03-CV-01431-PMP-PAL<br>BASE FILE |
| BRECKENRIDGE BREWERY OF COLORADO, LLC, et al.,<br>  Plaintiffs,<br>v.<br>ONEOK, INC., et al.,<br>  Defendants. | 2:06-CV-01351-PMP-PAL<br><br>ORDER |

Presently before the Court is Plaintiffs' Motion for Reconsideration of Orders Dismissing Certain Defendants for Lack of Personal Jurisdiction (Doc. #634;[1] Doc. #65 in 2:06-CV-01351-PMP-PAL) with supporting memorandum of law (Doc. #635; Doc. #66 in 2:06-CV-01351-PMP-PAL), filed on September 7, 2007. Defendants filed an Opposition (Doc. #687; Doc. #94 in 2:06-CV-01351-PMP-PAL) on September 24, 2007. Plaintiffs filed a Reply (Doc. #715; Doc. #102 in 2:06-CV-01351-PMP-PAL) on October 9, 2007.

Also before the Court is Plaintiffs' Motion for Reconsideration of Order Dismissing Defendant, CenterPoint Energy, Inc. for Lack of Personal Jurisdiction (Doc. #56 in 2:06-CV-01351-PMP-PAL) with supporting memorandum of law (Doc. #57 in 2:06-CV-01351-PMP-PAL), filed on September 4, 2007. Defendant CenterPoint Energy, Inc.

---

[1] Document numbers refer to the base file, 2:03-CV-01431-PMP-PAL, unless otherwise noted.

filed an Opposition (Doc. #96 in 2:06-CV-01351-PMP-PAL) on September 24, 2007. Plaintiffs filed a Reply (Doc. #715; Doc. #102 in 2:06-CV-01351-PMP-PAL) on October 9, 2007.

Also before the Court is Plaintiffs' Motion for Jurisdictional Discovery Pursuant to F.R.C.P. 26(b)(1) (Doc. #637; Doc. #67 in 2:06-CV-01351-PMP-PAL) with supporting memorandum of law (Doc. #638; Doc. #68 in 2:06-CV-01351), filed on September 7, 2007. Defendants filed Oppositions (Doc. #688 & #689; Doc. #95 & #96 in 2:06-CV-01351-PMP-PAL) on September 24, 2007. Plaintiffs filed a Reply (Doc. #715; Doc. #102 in 2:06-CV-01351-PMP-PAL) on October 9, 2007.

## I. BACKGROUND

This case is one of many in consolidated Multidistrict Litigation arising out of the energy crisis of 2000-2001. Plaintiffs originally filed the above action in the District Court of the City and County of Denver, Colorado. (Notice of Removal, Compl. [2:06-CV-01351-PMP-PAL, Doc. #2].) Defendants removed the case to the United States District Court for the District of Colorado. (Id.) The Judicial Panel on Multidistrict Litigation entered a Transfer Order pursuant to 28 U.S.C. § 1407 centralizing the foregoing action in this Court for coordinated or consolidated pretrial proceedings. (Letter dated November 2, 2006 [2:06-CV-01351-PMP-PAL, Doc. #29].)

In this litigation, Plaintiffs seek to recover damages on behalf of natural gas rate payers. In the Complaint, Plaintiffs allege Defendants engaged in anti-competitive activities with the intent to manipulate and artificially increase or control the price of natural gas for consumers. (Compl. at 31-35.) Specifically, Plaintiffs allege Defendants knowingly delivered false reports concerning trade information and engaged in wash trades, which conduct violated Colorado Revised Statutes § 6-4-101, et seq. (Id.)

///

///

2

Plaintiff Breckenridge Brewery of Colorado, LLC is a Colorado limited liability company with its principal place of business in Denver, Colorado. (Id. at 3.) Plaintiff BBD Acquisition Co. is a Colorado corporation with its principal place of business in Denver, Colorado. (Id.) Plaintiffs allege they purchased natural gas directly from one or more Defendants, and from other natural gas sellers in the State of Colorado, during the past six years. (Id.) According to the Complaint, Defendants are natural gas companies that buy, sell, transport, and store natural gas, including their own and their affiliates' production, in the United States and in the State of Colorado. (Id. at 3-31.)

Plaintiffs allege that during the relevant time period of Defendants' allegedly conspiratorial misconduct, Defendants Duke Energy Carolinas, LLC[2] ("Duke Energy Carolinas"), CMS Energy Corporation ("CMS"), and Reliant Energy, Inc. ("Reliant") "wholly control[led] and dominate[d]" their subsidiaries. (Compl. at 13, 20, 24.) Plaintiffs also allege Defendants Duke Energy Carolinas, CMS, and Reliant directly, and through affiliates, entered into a conspiracy which tended to prevent full and free competition or which tended to advance or control the market prices of natural gas. (Id. at 13, 20, 24.) Plaintiffs allege Defendants' conspiracy was "intended to have, and did have, a direct, substantial and reasonably foreseeable effect on United States commerce and on commerce in the State of Colorado during the relevant period." (Id. at 13-14, 20, 24.) Plaintiffs allege Defendants' officers or directors made in furtherance of the conspiracy:

> strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas which was sold, and those policies and decisions were implemented on an operational level by affiliates . . . in the United States and in the State of Colorado.

---

[2] Defendant Duke Energy Carolinas, LLC formerly was known as Duke Energy Corporation, a North Carolina corporation, which was named in this action as Duke Energy Corporation. (Def. Duke Energy Carolinas, LLC's Mot. to Dismiss for Lack of Personal Jurisdiction, Decl. of Sue Harrington at 2.)

(Id. at 14, 20, 25.)  According to the Complaint, Defendants Duke Energy Carolinas, CMS, and Reliant are subject to personal jurisdiction in Colorado "based upon the activities of [their] corporate affiliates . . . that traded and sold natural gas in the United States and in the State of Colorado during the relevant period."  (Id. at 14, 21, 25.)

Plaintiffs' allegations with respect to Defendant CenterPoint Energy, Inc. ("CenterPoint") are slightly different.  Plaintiffs allege that as part of a corporate restructuring of former Reliant Energy, Inc. in January 2002, CenterPoint became the parent of Defendant Reliant Energy Services, Inc. ("RES") and Reliant Resources, Inc ("RRI"). (Id. at 24.)  Plaintiffs aver CenterPoint wholly controls and dominates RES and is therefore liable for RES's illegal acts.  (Id.)  Unlike the allegations with respect to the other Defendants, the Complaint does not contain an allegation specific to Defendant CenterPoint that CenterPoint entered into a conspiracy to prevent full and free competition or control the market prices of natural gas.

Defendants moved to dismiss this action for lack of personal jurisdiction because they have no contacts with Colorado and their status as parent companies, standing alone, could not subject them to personal jurisdiction based on their subsidiaries' contacts with Colorado.  Defendants also argued they could not be subject to personal jurisdiction on an agency, alter ego, or conspiracy theory, and subjecting them to personal jurisdiction in Colorado would violate federal due process.

Plaintiffs responded that they met their prima facie burden under Colorado's long-arm statute because the Complaint alleges Defendants' affiliates transacted business in Colorado in furtherance of a conspiracy to which Defendants were parties.  In addition, Plaintiffs contended the Colorado long-arm statute covers tortious conduct occurring inside Colorado by a party's agent, or tortious conduct committed outside of Colorado that causes injury in Colorado and that Defendants' antitrust violations constitute a tort.  Moreover, Plaintiffs argued Defendants were subject to jurisdiction in Colorado under the conspiracy

theory of jurisdiction.

In separate Orders, this Court ruled Plaintiffs failed to present a prima facie case of personal jurisdiction over Defendants Duke Energy Carolinas, CMS, Reliant, and CenterPoint. (Orders at Doc. #566, #570, #571, & #572.) With respect to Defendants Duke Energy Carolinas, CMS, and Reliant, the Court held Plaintiffs failed to make sufficient allegations supporting personal jurisdiction over these Defendants on an agency or alter ego theory. The Court also noted that even if Plaintiffs had made such allegations, Defendants presented affidavits denying the affiliates were the parents' agents or alter egos, and Plaintiffs failed to present competing evidence.

The Court also held that regardless of whether Colorado or the United States Court of Appeals for the Ninth Circuit would adopt or reject the conspiracy theory of personal jurisdiction, Plaintiffs' broad and conclusory allegations did not satisfy the express aiming requirement under the due process analysis. Plaintiffs' allegation that all of the Defendants in this action conspired to commit unlawful acts that they reasonably could foresee would injure Plaintiffs and others in the State of Colorado is insufficient to show Defendants expressly aimed their activity at Colorado.

With respect to Defendant CenterPoint, the Court held that because CenterPoint brought forth evidence that it has no corporate relationship with or ownership interest in RES and never engaged in business in Colorado, the Court could not assume the truth of Plaintiffs' allegations, and Plaintiffs did not produce proof to support their jurisdictional allegations. The Court also noted that while Plaintiffs alleged other Defendants in this action entered into a conspiracy to affect natural gas prices, Plaintiffs did not make that allegation with respect to Defendant CenterPoint. The Court therefore declined to evaluate whether CenterPoint would be subject to personal jurisdiction on a conspiracy theory.

///

///

Plaintiffs move the Court to reconsider these Orders, arguing the Court erred in concluding conspiracy theory jurisdiction does not exist over these Defendants.  With respect to Defendant CenterPoint, Plaintiffs further argue the Court erred in concluding Plaintiffs did not allege CenterPoint entered into the conspiracy.  Plaintiffs also argue the Court erred by ruling on the motions without first permitting jurisdictional discovery and Plaintiffs now move for jurisdictional discovery.

Defendants respond that the Court properly found Plaintiffs' allegations do not support conspiracy theory jurisdiction, and, in any event, neither Colorado nor the Ninth Circuit have adopted the theory.  Defendants further argue no jurisdictional discovery is warranted because Plaintiffs' allegations are conclusory and without factual support.

**II.  MOTIONS TO RECONSIDER**

Reconsideration of a prior ruling is appropriate only in limited circumstances, such as the discovery of new evidence, an intervening change in controlling law, or where the initial decision was clearly erroneous or manifestly unjust.  Nunes v. Ashcroft, 375 F.3d 805, 807-08 (9th Cir. 2004).  A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled.  Brogdon v. Nat'l Healthcare Corp., 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000).

As the Court noted in its prior Order, Plaintiffs bear the burden of demonstrating the Court has personal jurisdiction over Defendants.  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  To meet this burden, Plaintiffs must demonstrate that personal jurisdiction over a defendant is (1) permitted under the applicable state's long-arm statute and (2) that the exercise of jurisdiction does not violate federal due process.  Id.  In diversity cases such as this, "a federal court applies the personal jurisdiction rules of the forum state provided the exercise of jurisdiction comports with due process."  Scott v. Breeland, 792 F.2d 925 (9th Cir. 1986).  However, "federal law is controlling on the issue of due process under the United States Constitution."  Data Disc, Inc. v. Sys. Tech. Assoc.,

Inc., 557 F.2d 1280, 1286 n.3 (9th Cir. 1977). The Court therefore applies Colorado law in deciding whether personal jurisdiction is appropriate under the Colorado long-arm statute and applies Ninth Circuit law in deciding whether jurisdiction is appropriate under the due process clause. See In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1174 (D.C. Cir. 1987) (concluding that "the transferee court [should] be free to decide a federal claim in the manner it views as correct without deferring to the interpretation of the transferor circuit."); Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993) (holding that "a transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit").

Because Colorado's long-arm statute extends to the limits of federal due process clause of the Fourteenth Amendment, the analysis collapses into a single inquiry of whether exercising personal jurisdiction comports with federal due process standards. Cameron v. Group Voyagers, Inc., 308 F. Supp. 2d 1232, 1239 (D. Colo. 2004). To satisfy due process, a nonresident defendant must have "minimum contacts" with the forum state so that the assertion of jurisdiction does not offend traditional notions of fair play and substantial justice. Pebble Beach Co., 453 F.3d at 1155 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 315 (1945)). A federal district court may exercise either general or specific personal jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984). Only specific jurisdiction is at issue as to these Defendants in this case.

A nonresident defendant's contacts with the forum state may permit the exercise of specific jurisdiction if: (1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the privileges of conducting activities within the forum, (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable. Pebble Beach Co., 453 F.3d at 1155-56. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." Omeluk v.

Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).

Under the first prong of the "minimum contacts test," the plaintiff must establish either that the defendant "(1) purposefully availed himself of the privilege of conducting his activities in the forum, or (2) purposefully directed his activities toward the forum." Pebble Beach, 453 F.3d at 1155. "Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum." Id. Evidence of direction usually consists of conduct taking place outside the forum that the defendant directs at the forum. Id. at 1155-56.

The purposeful direction aspect of the first prong is satisfied when a foreign act is both aimed at and has effect in the forum. Id. In other words, the defendant "must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." Id. To satisfy the third element of this test, the plaintiff must establish the defendant's conduct was "expressly aimed" at the forum; a "mere foreseeable effect" in the forum state is insufficient. Id. The "express aiming" requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct "individually targeting a known forum resident." Bancroft & Masters, Ins. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000).

The second prong of the specific jurisdiction test requiring that the contacts constituting purposeful availment or purposeful direction give rise to the current action, is measured in terms of "but for" causation. Id. at 1088. Under the last prong of the specific jurisdiction test, courts generally consider a variety of factors to determine whether exercising jurisdiction would be reasonable:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of

> the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

Id. A court must balance all seven factors and no factor is determinative. Core-Vent Corp. v. Nobel Indus., 11 F.3d 1482, 1488 (9th Cir. 1993).

Where the issue is before the Court on a motion to dismiss based on affidavits and discovery materials without an evidentiary hearing, the plaintiff must make "a prima facie showing of facts supporting jurisdiction through its pleadings and affidavits to avoid dismissal." Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1119 (9th Cir. 2002). The Court accepts as true any uncontroverted allegations in the complaint and resolves any conflicts between the facts contained in the parties' evidence in the plaintiff's favor. Id. However, for personal jurisdiction purposes, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." Alexander v. Circus Circus Enter., 972 F.2d 261, 262 (9th Cir. 1992).

### A. Defendants Duke Energy Carolinas, CMS, and REI

Plaintiffs argue that under the Erie doctrine, Colorado law controls the question of whether the Court may exercise personal jurisdiction, and that Colorado law recognizes the conspiracy theory of jurisdiction. Plaintiffs also argue the Court erred by applying Ninth Circuit law on the requirement that a defendant expressly aim his conduct at the forum because the Ninth Circuit did not address the conspiracy theory of jurisdiction, and because the Court's decision is contrary to the result that would occur under Colorado law. Finally, Plaintiffs argue a defendant who conspires to commit a business tort that causes harm in the forum state satisfies the minimum contacts test.

Plaintiffs' reliance on the Erie doctrine is misplaced. Under the Erie doctrine, a federal court sitting in diversity applies state substantive law and federal procedural law. Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001). To determine whether a federal district court has personal jurisdiction over a defendant, an applicable

long-arm statute must permit it and the exercise of personal jurisdiction must not violate federal due process standards. <u>Pebble Beach Co.</u>, 453 F.3d at 1154-55.  Even where the Court relies on a state long-arm statute, exercise of personal jurisdiction also must comport with federal due process standards, which is a question of federal law. <u>Id.</u>; <u>Data Disc, Inc.</u>, 557 F.2d at 1286 n.3.

The Court did not decide the matter contrary to Colorado law or reach a result different than what a Colorado court would reach.  First, Plaintiffs' contention that Colorado has adopted the conspiracy theory of jurisdiction is incorrect.  As this Court noted in its prior Order, the Colorado Supreme Court has not expressly adopted or rejected the conspiracy theory of personal jurisdiction. <u>See</u> <u>First Horizon Merch. Servs., Inc. v. Wellspring Capital Mgmt., LLC</u>, 166 P.3d 166, 178 (Colo. App. 2007).  Plaintiffs rely on one Colorado Court of Appeals case and two cases from the United States District Court for the District of Colorado to argue Colorado has adopted the conspiracy theory of personal jurisdiction. <u>See</u> <u>Pace v. D & D Fuller CATV Constr., Inc.</u>, 748 P.2d 1314, 1314-16 (Colo. App. 1987); <u>Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Kozeny</u>, 115 F. Supp. 2d 1231, 1237 (D. Colo. 2000); <u>Hertz v. Luzenac America, Inc.</u>, 2005 WL 1925702, 4 (D. Colo. 2005) (unpublished).

<u>Pace</u> does not definitively support the conclusion that Colorado recognizes the conspiracy theory of personal jurisdiction.  In <u>Pace</u>, the plaintiff sued her former parents-in-law for outrageous conduct in assisting her ex-husband in the kidnapping and concealment of her son.  748 P.2d at 1314-16.  The defendants argued they were not subject to personal jurisdiction in Colorado for their alleged acts of assistance in North Carolina. <u>Id.</u> at 1315.  The trial court granted the defendants' motion to dismiss for lack of jurisdiction. <u>Id.</u>  On appeal, the Colorado Court of Appeals determined the plaintiff sufficiently had alleged tortious conduct outside the state, directed at a known forum resident, to support personal jurisdiction. <u>Id.</u> at 1316.  Among the acts the defendants took were "concealing the

whereabouts of [the child] and his father from North Carolina law enforcement authorities and [the plaintiff's] private investigator, . . . assist[ing] the father in obtaining funds which enabled him to remain at large with their son, and communicat[ing] by mail with state agencies in Colorado in furtherance of a conspiracy to aid and abet the parental kidnapping." Id.

While this language may support an inference that the Colorado Court of Appeals was resting on a conspiracy theory of jurisdiction, the Colorado Supreme Court's order affirming this decision is much more explicit as to the basis for jurisdiction. The Colorado Supreme Court first determined that Colorado recognizes the tort of interference with the parent-child relationship. D & D Fuller CATV Const., Inc. v. Pace, 780 P.2d 520, 524 (Colo. 1989). The Colorado Supreme Court then determined that such allegations constituted a prima facie showing of a tort within the state because Colorado's long-arm statute extends jurisdiction over persons who commit a tort in a foreign state which causes injury in Colorado. Id. at 524-25.

Finally, the Colorado Supreme Court determined exercising personal jurisdiction here comported with federal due process standards because the defendants committed acts in North Carolina that were directed at and intentionally intended to interfere with the child's relationship with his mother in Colorado, to avoid a Colorado custody order, and to conceal the child and prevent his return to Colorado. Id. at 525. "Thus, Colorado was the focal point of both the petitioners' actions and the effects of those actions." Id. The Colorado Supreme Court thus applied settled federal due process standards to find the defendants' out-of-state tortious acts were expressly aimed at a known forum resident and defendants knew or should have known their conduct would cause harm in Colorado. The Colorado Supreme Court did not hold that a co-conspirator's contacts with the forum could be imputed to non-resident co-conspirators for personal jurisdiction purposes.

///

11

As for National Union and Hertz, a federal district court predicts what a state's highest court would do if it addressed a particular issue; it does not announce definitive state law. Dyack v. Commonwealth of N. Mariana Islands, 317 F.3d 1030, 1034 (9th Cir. 2003) (in addressing an issue the state's highest court has not resolved, a federal court must predict what the state's highest court would do). The federal court's prediction therefore is persuasive authority, but it is not a pronouncement of Colorado's law from Colorado's highest court. Unlike Pace, neither National Union nor Hertz expressly engaged in a federal due process analysis in determining that conspiracy theory jurisdiction applied in those cases. See National Union, 115 F. Supp. at 1236-37; Hertz, 2005 WL 1925702, at *4. In National Union, the district court found two other bases for exercising personal jurisdiction over the non-resident defendant and its conspiracy theory analysis was abbreviated. National Union, 115 F. Supp. at 1236-37. In Hertz, the district court found the plaintiff had failed to allege any conspiratorial acts committed in Colorado and thus conspiracy theory jurisdiction was lacking. Hertz, 2005 WL 1925702, at *4.

Moreover, even if these federal cases accurately set forth Colorado law, each recites the requirement the Colorado Court of Appeals noted in First Horizon that a plaintiff must make "some sort of prima facie factual showing of a conspiracy" to meet the requirement that a defendant have minimum contacts with the forum state to support personal jurisdiction. First Horizon, 166 P.3d at 178; Nat'l Union, 115 F. Supp. 2d at (plaintiff must plead with particularity a conspiracy and overt acts in furtherance of the conspiracy); Hertz, 2007 WL 1925702 at *4 (same). Here, the Court concluded that even if Colorado would adopt the conspiracy theory of personal jurisdiction, Plaintiffs' conclusory allegations did not satisfy Plaintiffs' burden of making a prima facie showing of conspiracy to support personal jurisdiction over Defendants. Consequently, nothing in the Court's prior Order contradicts any established or predicted Colorado law. Furthermore, Pace supports the Court's conclusion, as it demonstrates the type of express aiming at a known

12

forum resident that federal due process standards require to subject a non-resident to personal jurisdiction based on acts occurring outside the forum.

### B. Defendant CenterPoint

Plaintiffs argue this Court clearly erred by stating Plaintiffs had not alleged Defendant CenterPoint entered into a conspiracy with the other Defendants. Defendant CenterPoint responds a reasonable reading of Plaintiffs' Complaint supports the conclusion that Plaintiffs pled only that CenterPoint was responsible for its subsidiary's alleged illegal acts, not that CenterPoint itself had engaged in any illegal acts. CenterPoint further argues that even if the Complaint alleged CenterPoint entered into the conspiracy, the Court previously has ruled with respect to the other Defendants that even if the conspiracy theory of jurisdiction is a valid means of exercising personal jurisdiction, Plaintiffs have not alleged sufficient facts to support such a theory in this case.

The Court did not clearly err in concluding Plaintiffs did not plead Defendant CenterPoint itself entered the conspiracy. In the Complaint, Plaintiffs plead that other Defendants entered into the conspiracy, but a similar allegation is lacking for Defendant CenterPoint. (Compare Compl. at ¶¶ 6, 11, 16, 20, 24, 26, 30 with ¶ 34.) Instead, the Complaint identifies the basis for CenterPoint's liability as being responsible for its subsidiary's illegal acts. (Id. at ¶ 34.)

Further, Defendant CenterPoint noted in its motion to dismiss that the Complaint did not allege CenterPoint entered into the conspiracy. (Specially Appearing Def. CenterPoint Energy, Inc.'s Mot. to Dismiss & Mem. of P. & A. in Supp. [Doc. #460] at 2.) Plaintiffs' response with respect to Defendant CenterPoint was as follows:

> Plaintiffs allege that CenterPoint Energy, Inc. wholly controls and dominates Reliant Energy Service, Inc., and is responsible for its illegal acts. The Declaration of Richard Dauphin attempts to refute this allegation, and Plaintiffs have no facts at this early stage to contradict that Declaration. But CenterPoint Energy, Inc. never refutes Plaintiffs' allegations relating to Reliant Energy, Inc., or Reliant Resource, Inc.'s participation in the alleged nationwide conspiracy to

13

> fix natural gas prices, or Reliant Energy Services, Inc.'s payment of $18 million in civil penalties to the United States Commodity Futures Trading Commission to settle charges of false reporting and attempted manipulation of natural gas prices. These latter allegations are alone sufficient to support personal jurisdiction.

(Pls.' Resp. to Defs.' Mots. to Dismiss on Personal Jurisdiction Grounds [Doc. #39 in 2:06-CV-01351-PMP-PAL] at 9 (internal citations omitted).) Plaintiffs did not refute Defendant CenterPoint's contention that Plaintiffs did not allege CenterPoint itself entered the conspiracy, and Plaintiffs repeated the Complaint's allegations that the basis for CenterPoint's alleged liability was its responsibility for its subsidiary's illegal acts. The Court therefore did not clearly err when it stated Plaintiffs did not allege Defendant CenterPoint entered the conspiracy. As a consequence, the Court did not clearly err when it ruled the conspiracy theory had no application to Defendant CenterPoint.

Even if Plaintiffs' allegations which lump together all Defendants could suffice to put Defendant CenterPoint on notice that it also was alleged to have entered the conspiracy despite the more specific allegations related to CenterPoint, the Court already has held that Plaintiffs' conclusory allegations do not satisfy due process to subject Defendants to personal jurisdiction on this basis. Plaintiffs' allegations regarding Defendant CenterPoint are even more tenuous than the other Defendants given the lack of even a conclusory allegation CenterPoint entered the conspiracy.

### C. JURISDICTIONAL DISCOVERY

Plaintiffs move the Court to permit Plaintiffs to engage in jurisdictional discovery. Plaintiffs argue they have a right to jurisdictional discovery and dismissing Defendants without discovery is reversible error. Plaintiffs contend that because jurisdictional discovery was stayed in a consolidated case, Plaintiffs reasonably relied on that decision to conclude they would be permitted jurisdictional discovery in this case once the Court ruled on certain substantive motions. Defendants respond that Plaintiffs have no right to jurisdictional discovery and their allegations are too conclusory to support

discovery.

A court ordinarily should grant discovery regarding jurisdiction where the parties dispute pertinent facts bearing on the question of jurisdiction or more facts are needed. Laub v. United States Dep't of Interior, 342 F.3d 1080, 1093 (9th Cir. 2003) (quotation omitted). However, a court may decline to permit further discovery if it is clear that further discovery would not produce evidence of facts supporting jurisdiction. Id. Thus, if the plaintiff's claim of personal jurisdiction "appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery . . . ." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1160 (9th Cir. 2006) (quotation omitted). Whether to permit discovery on jurisdictional facts lies within the district court's discretion. Id. at 1154. The Ninth Circuit will not reverse the district court's decision to permit or deny discovery, "except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986) (quotation omitted).

When Defendants moved to dismiss for lack of personal jurisdiction, Plaintiffs did not explicitly request the Court defer ruling on the motions until Plaintiffs had an opportunity to conduct jurisdictional discovery. Rather, Plaintiffs noted that because no jurisdictional discovery had occurred, Plaintiffs needed only to make a prima facie case of personal jurisdiction to survive Defendants' motions. (Pl.'s Response to Defs.' Mots. to Dismiss on Personal Jurisdiction Grounds [Doc. #39 in 2:06-CV-01351-PMP-PAL] at 2.) However, Plaintiffs now argue that in a consolidated case, J.P. Morgan Trust Company v. The Williams Companies, Inc., et al., 2:05-CV-01331-PMP-PAL, the Court stayed jurisdictional discovery pending the Court's resolution of certain substantive motions. Plaintiffs contend they reasonably relied on this stay in the belief that jurisdictional discovery would commence upon the Court's ruling on the substantive motions in all cases.

15

The Court, in its discretion, will grant Plaintiffs' motion for jurisdictional discovery.  The Court concludes Plaintiffs reasonably determined that the Court would deny any request for jurisdictional discovery in this action given the Court's stay of jurisdictional discovery involving these same Defendants in the consolidated J.P. Morgan case.  By separate Order, the Court is granting the J.P. Morgan Plaintiff's request for jurisdictional discovery.  Plaintiffs here make similar allegations and request similar jurisdictional discovery and the Court will grant Plaintiffs' request for jurisdictional discovery.

Plaintiff has alleged these Defendants entered into a conspiracy with each other and through their affiliates to fix natural gas prices in Colorado and elsewhere in the United States.  Plaintiff also has alleged the parent company Defendants wholly controlled and dominated their subsidiaries, both in their business in Colorado generally and specifically with respect to the alleged price fixing conspiracy.  Plaintiff further alleges the parent company Defendants set strategic policies regarding natural gas reporting which their affiliates implemented at an operational level.  The Court concludes more facts are needed to determine whether Defendants are subject to personal jurisdiction in Colorado.   It is not clear that permitting discovery would fail to uncover facts supporting jurisdiction.  The Court therefore will vacate its prior Orders dismissing Defendants from this action, and will grant Plaintiffs a jurisdictional discovery period from the date of this Order until March 28, 2008.

The Court will limit jurisdictional discovery as to Defendant CenterPoint, however, because Plaintiffs have not made even conclusory allegations that Defendant CenterPoint entered into a conspiracy or otherwise committed any tortious acts itself.  Consequently, no discovery on any alleged tortious act is warranted with respect to Defendant CenterPoint.

///

///

The Amended Complaint seeks to hold CenterPoint liable for its subsidiary Reliant Energy Services, Inc.'s alleged illegal acts.  However, Defendant CenterPoint has presented evidence that it is not Reliant Energy Services, Inc.'s parent company.  Plaintiff contends that it cannot determine from public filings whether this is an accurate representation, and it ought to be permitted to test the statements in CenterPoint's supporting declaration.  Because discovery on this narrow issue should not be burdensome, the Court will permit Plaintiff to test CenterPoint's contention through limited discovery on the issue of whether CenterPoint is Reliant Energy Services, Inc.'s parent company only.[3]

Should it turn out CenterPoint is Defendant Reliant Energy Services, Inc.'s parent company, Plaintiff may move the Court for further relief regarding jurisdictional discovery.  However, unless and until Plaintiff establishes Defendant CenterPoint is the parent company of a company that actually conducted any business in Colorado, Plaintiff has no basis to assert this Court has personal jurisdiction over Defendant CenterPoint.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Reconsideration of Orders Dismissing Certain Defendants for Lack of Personal Jurisdiction (Doc. #634; Doc. #65 in 2:06-CV-01351-PMP-PAL) is hereby GRANTED in part and DENIED in part.  The motion is granted in that the Court hereby modifies its prior Orders (Doc. #570, #571, & #572) to reinstate Defendants Duke Energy Carolinas, LLC, Reliant Energy, Inc., and CMS Energy Corporation as Defendants in this action pending jurisdictional discovery.

///

///

---

[3] The Amended Complaint is less than clear on the corporate relationships, alleging that Defendant CenterPoint wholly dominates and controls Reliant Energy Services, Inc. and also that Defendant Reliant Energy Inc., f/k/a Reliant Resources, Inc. wholly dominates and controls Reliant Energy Services, Inc.  (Am. Compl. at ¶¶ 35-39.)

IT IS FURTHER ORDERED that Plaintiffs' Motion for Reconsideration of Order Dismissing Defendant, CenterPoint Energy, Inc. for Lack of Personal Jurisdiction (Doc. #56 in 2:06-CV-01351-PMP-PAL) is hereby GRANTED in part and DENIED in part. The motion is granted in that the Court hereby modifies its prior Order (Doc. #566) to reinstate Defendant CenterPoint Energy, Inc. as a Defendant in this action pending jurisdictional discovery.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Jurisdictional Discovery Pursuant to F.R.C.P. 26(b)(1) (Doc. #637; Doc. #67 in 2:06-CV-01351-PMP-PAL) is hereby GRANTED.

IT IS FURTHER ORDERED that the parties may conduct jurisdictional discovery as outlined above from the date of this Order through March 28, 2008. Defendants may file renewed motions to dismiss for lack of personal jurisdiction after the close of this discovery period, but must file any such motions no later than April 28, 2008.

DATED: November 28, 2007

_____
PHILIP M. PRO
United States District Judge